FRANKLIN PARMELEE *et al.*, Appellants, *v.* JOSEPH W. HAMBLETON *et al.*, Appellees.

APPEAL FROM KANE.

Where parties have entered into a written contract for erecting a building, which provides that the architect shall give a construction to the contract, and in case of a dispute as to his decision, arbitration shall be had, the owners of the property cannot, by preventing such arbitration, deprive the contractor of any rights which he could insist on before the arbitrators. He will be protected by the courts.

Parties are bound by the terms of their contract under a fair and reasonable construction of the whole instrument, and their acts may be used to show what their understanding of the agreement was.

THIS was an action of assumpsit, brought by the above appellees against the appellants, to the January term, A. D. 1859, of the Cook County Court of Common Pleas. After the organization of the Superior Court of Chicago, a change of venue was taken from that court to the Kane Circuit Court.

The action was based on a contract for building, of which the parts referred to in the opinion were as follows:

Superintendents, and their duties:

Boyington & Wheelock, or assistant architects, are declared to be the superintendents of the work for the owner. Their duties will consist in giving, on demand, such instruction, either in language, writing or drawing, as in their judgments the nature of the work may require, having particular care that any and all work done, and materials used for the work, be such as is hereinafter described, in giving on demand, any certificates that the contractor may be entitled to, and in settling all deductions of or additions to the contract price which may grow out of alterations of the design, after the same is declared to

be contract. Also determining the amount of damages which may accrue from any cause, and to particularly decide upon the fitness of all material used, and work done.

The contractor being bound in all cases, to remove all improper work or materials, upon being directed so to do by the superintendent.

But if the contractor, after being directed as above, to remove the same, should refuse or neglect so to do, he shall not only suffer a deduction from the contract price, of the difference in value of proper and improper work and materials, but shall also be liable for all damages of whatever nature or kind, that may result from such cause. The above provisions to apply in the same way to all materials or work used, made or fixed, without the knowledge of the superintendent.

And it is hereby expressly provided, that, in case the contractor should feel aggrieved by the decision of the superintendent, an appeal may be taken from such decision to an arbitration, chosen indifferently, and whose decision in the matter shall be final, and binding on all parties.

The owner reserves the right to alter or modify the design, and to add to or diminish from the contract price, the difference to be adjusted as provided above.

The owner being bound, in all cases, to recognize the acts of his superintendent, not only as regards extra work, but also to the sufficiency of the design, the contractor being in no case responsible for any accident resulting to the work from a defective design, which fact must be determined by an arbitration of three disinterested men, chosen indifferently, and if found that the damages resulted from a want of proper care on the part of contractor, then, and in such case, the damages and loss shall be paid for and made good by him. But if found that the accident or damage resulted from an improper design, then, and in such case, all damages shall be sustained by owners; which, in all cases, must be real, and in no case constructive damages to be allowed.

All payments made on the work during its progress are on account of the contract, and shall, in no case, be construed as an acceptance of the work executed, but the contractor shall be liable to all the conditions of the contract, until the work is accepted, as finished and completed.

There were also clauses requiring the contractor to "set all stone and iron window caps and sills in a thorough manner," and stating the manner in which the iron anchors and straps were to be made and fastened.

After the completion of the building, the appellees being dissatisfied with the decision of the architect, notified appellants

that they wished an arbitration, and suggested the names of three persons as arbitrators. These the appellants refused to accept, and suggested others, but they were not agreed to, and the effort to arbitrate was abandoned at the instance of the appellants, who declined to select any other persons, stating that they would "rather leave the matter to the decision of the court and twelve men, than to any arbitrators they could get."

The other material facts are sufficiently stated in the opinion.

SCATES, MCALLISTER & JEWETT, for Appellants.

FARWELL, SMITH & THOMAS, for Appellees.

WALKER, J. The contract under which the labor was performed, provides that the architect is the superintendent of the owner, and by its terms, requires him to give interpretation to the contract, and certificates which the contractor might be entitled to receive, to make estimates of the amount to be added to or deducted from the contract price, occasioned by any change in the plan of the building or from any other cause. By it he had the power to require the contractor to remove all improper materials or work placed in the building. The contract also contains this clause: "And it is hereby expressly provided, that in case the contractor should feel aggrieved by the decision of the superintendent, an appeal may be taken from such decision to arbitrators, chosen indifferently, and whose decision in the matter shall be final and binding on all parties." By a subsequent clause, it is provided that the owner in all cases shall be bound to recognize the acts of his superintendent, not only as regards extra work, but also the sufficiency of the design, the contractor being in no case responsible for accident resulting from a defective design, which fact is also to be determined by arbitrators, chosen in the same manner as previously provided; and if they determine that the damage resulted from a want of proper care on the part of the contractor, the same shall be made good by him, but if from a defective design, all damages to be sustained by the owner.

It is insisted by appellant, that the agreement to arbitrate provided for in the first clause, only refers to the requirement to remove improper work, and the assessment of damages for extra work, and the second, as to questions whether the design is sufficient. These provisions are not, we think, so limited in their terms, nor is that the true construction. The contract had previously provided that the superintendent should give interpretations to the contract, and empowered him to give all certificates to the contractor which he might be entitled to

receive, to fix all deductions from or additions to the contract price, growing out of alterations of the design, to determine the amount of damages which might accrue from any cause, and particularly to decide on the fitness of the materials used and work performed. Also to require the removal of all improper materials furnished, or labor done. Why the arbitration first provided for, should be limited to his decision on any one of these various questions, and the others to be excluded from its operation, we are at a loss to perceive. A decision on any of them, seems to be equally embraced in its provisions. The language fails in terms to exclude any portion of these questions, nor does any other portion of the contract manifest such a design.

The second clause, providing for an arbitration, seems intended to submit the question to arbitrators without any decision of the superintendent, when a difference arose as to the plans furnished by him. This clause referred to the question of the sufficiency of the design adopted by the superintendent, and it would be useless to leave him to determine its sufficiency, as he had already determined that question when he furnished it. So this clause provides for an arbitration in the first instance. This explains the reason why this clause was adopted. It can hardly be supposed, that any person in making a contract involving so large an amount as this does, would be willing to submit all questions of construction or dispute under the contract, to be determined by the agent of the opposite party, without any appeal, and give to his decision the conclusive effect contended for by appellants. We perceive no such intention of the parties manifested by the agreement, and they seem not to have so understood it, as they each selected a set of arbitrators, to settle and decide the questions litigated in this case. When the effort to arbitrate fell through, appellants notified appellees that they would prefer to have the differences litigated, and declined to proceed with an arbitration. This clearly manifests that both parties understood, that under the agreement all questions were to be arbitrated, and they, we have no doubt, gave the contract its true construction. This court, in the case of *Mills* v. *Weeks*, 21 Ill. R. 561, and *McAuley* v. *Carter*, 22 Ill. R. 53, held that the decision of the architect is conclusive on the parties. This is unquestionably true where no objection is made to, or steps taken to avoid or reverse his decision. In these cases no question was made as to whether the parties were bound to arbitrate, and there was consequently no occasion to qualify what was then said. As no objection was taken to his decision when it was made, it was held to be conclusive on the parties. If the contracts in those

cases were similar to this, and any question had been raised as to the power to appeal from the decision of the architect to arbitrators, different language would have been employed. This disposes of the question raised on the pleas to which the demurrer was sustained, as well as the instructions based upon the construction that the decision of the superintendent was, under all circumstances, final.

It cannot be held, because the contract provides that the decision of the superintendent may be reviewed by arbitrators, that the contractor shall be bound by his decision, when the other party has prevented or declined an arbitration. To hold such a doctrine, would place it in the power of the owner under this contract to escape all liability by the erroneous decision of his own agent. The law has not clothed parties with such power to commit wrong. It will not tolerate such injustice.

It is urged, that appellees were not delayed by appellants in the completion of the work within the stipulated time, and that the damages assessed by the superintendent for delay should have been deducted by the jury. This question depends upon who, under the contract, was to furnish the iron caps for the windows, and the iron belt-courses, and the cut stone for sills and belt-course of the towers. The evidence shows, that the delay was occasioned either in whole or in part by the delay in procuring these materials. It further shows that the appellants furnished and paid for a portion, if not all of them. And we nowhere find, from the evidence, that they ever claimed that appellees were to either furnish or pay for them. Again, the architect told appellees' hands that they should be paid for the time they lost, by delay in furnishing these articles, and we find that appellants did pay to appellees' foreman eighty-five dollars for the delay. Now when it is remembered that the superintendent was fully empowered to give a construction to the contract, and when we see that the appellants, under that contract, furnish materials and pay for them, without any explanation, and see that the superintendent promises the hands that they should be paid for the loss of time occasioned by this delay, and the appellants so paying them, the conclusion is irresistible, that the superintendent had given the contract the construction that appellants were to furnish these articles. If this be true, the appellees are not chargeable for the delay in not furnishing them in proper time, and the jury were fully warranted in not deducting the sum found by the superintendent for the non-completion of the building, on that account. The evidence was properly before the jury, and it was their province to determine whether the delay was occasioned by appellants, and we see no reason for disturbing their finding.

39

Nor do we perceive that they were probably misled by the instructions given by the court.  Upon the whole of this record we perceive no error for which the judgment of the court below should be reversed, and it is therefore affirmed.

*Judgment affirmed.*