## 479. MARTIN v. THROWER.

1. Parol evidence is admissible, either to explain ambiguities in a written contract, or to determine, where a writing is ambiguous, whether such writing in fact indicates a contract, or a mere memorandum—of itself raises the presumption of an agreement between the parties, or manifests a mere tentative proposition on the part of one of the parties.

2. A contract may be partly in writing and partly verbal. In such a case all evidence tending to show what the entire contract really was should be admitted.

3. While full latitude of expression should be allowed the trial judge in ruling upon the admissibility of evidence, language prejudicial in its effect upon the rights of either party should be studiously avoided. And where the language of the court in rulings made during the trial clearly depreciates the contention of either party, and yet the evidence supporting such contention, as well as the contention itself, is permitted to go to the jury, they should be so instructed thereafter as to leave the contention in as fair a light before them as if such prejudicial remarks had not been made.

4. It is the duty of the court to construe written contracts. But it is not for the court to construe any part of a contract which depends, for its existence and completeness, upon parol testimony as to facts which are in dispute.

5. A contract resting in parol must be assented to by both parties in the same sense. Mutual assent is assent to the same thing in the same sense, under a common understanding of the stipulations agreed to.

6. The burden is upon him who seeks a recovery upon a contract to prove the terms and proper execution of such contract, by the preponderance of evidence; and upon request the jury should be charged to this effect.

7. The plaintiff having failed to prove his case as laid, a verdict in his favor was unwarranted.

Complaint, from city court of Atlanta—Judge Calhoun. April 20, 1907.

Argued October 14, 1907.—Decided February 28, 1908.

*Candlers, Thomson & Hirsch,* for plaintiff in error.

*James E. Warren,* contra.

RUSSELL, J. Thrower, a real-estate agent, brought a suit against Miss Clara Martin to recover $150, alleged to be due as commissions for obtaining a customer ready, willing, and able to purchase and pay for a certain house and lot which the plaintiff claimed had, by the owner, been placed in his hands for sale at a stipulated price. The plaintiff's petition as amended alleged that the defendant had authorized him to sell the lot in question for $3,500 net, and that he found a purchaser, one John W. Alexander, who was ready to purchase the same, and who was willing and able to

pay that sum for it, but that the defendant refused to make title to the property and declined to consummate the trade according to her agreement. According to the plaintiff's petition, the defendant's agreement and authorization to sell the property was verbal, except the following memorandum, written by her and handed to the plaintiff: "Atlanta, Ga., Jan. 4th, 1906. Lot 80x-90, No. 11 Williams street. Want it to net me $3,500 (hundred). [Signed] Clara Martin." The plaintiff contended that having sold the lot to Alexander, who is willing and ready to pay $3,650 for it, he is entitled to the $150—the excess above the price Miss Martin agreed to take—as commission. The defendant denied all the allegations of the petition, and in addition pleaded specially that the memorandum was obtained by fraud, and that it was no evidence of either an intention or desire on her part to sell her lot at $3,500, but that the paper was asked for and accepted by the plaintiff as merely a memorandum by which the property could be inspected and appraised, and not as authority to sell. She averred that Thrower was acting as her renting agent for another piece of property, and that, relying on the fiduciary relationship thus existing, she asked his advice as to what her property was worth and what it would sell for,—stating to him that she did not know what it was worth or whether it would bring $3,500, and distinctly stating at the time that she would not consider any offer for less than that, and also telling him that she did not know that she would sell it at all. The defendant averred that the plaintiff himself dictated the memorandum and informed her he would look at the property and advise her as to its value. The jury found a verdict for the plaintiff for $150 principal, and interest thereon. The defendant moved for a new trial, and assigns error on the refusal of the trial judge to grant her motion for new trial.

For the reason that a nonsuit should never be granted if there is a single thread of evidence strong enough to hold a verdict, it is not necessary to pass upon the refusal to nonsuit. It may be that under the ruling in *Emery* v. *Atlanta Exchange,* 88 *Ga.* 330, the evidence for the plaintiff would have authorized the jury to infer that there was a contract between the parties, and that the contract contemplated that the plaintiff's commissions should be the excess which the plaintiff could obtain from the purchaser procured by him over the defendant's price of $3,500. We shall

not, therefore, adjudge the refusal of a nonsuit to be erroneous. A motion to nonsuit should often be refused where the grant of a new trial might be proper. *Pendleton* v. *Atlantic Lumber Co.,* ante, 714 (60 S. E. 377). But it is only where it is manifest that it was one of the stipulations of the contract, and within the contemplation of the parties, that the commissions of a real estate agent (or of any agent representing any seller) are to be the excess over a certain price that such agent will be entitled to receive more than the reasonable value of his services on a quantum meruit. And in such cases it should appear that every fact of which the seller should have been informed has been fully disclosed. Unless there is either an express agreement to that effect, or unless it must necessarily be implied, from the terms of the contract or from the nature of the case, that an agent to sell is to receive, as his commissions, all that he can secure over and above a certain sum, it will never be presumed that this overplus is to be the agent's compensation for his services. It is the duty of one employed to sell to obtain the very best possible price for his principal; and generally, in the absence of express stipulation to the contrary, this presumption is controlling. An agency to sell real estate for one does not naturally mean taking an option from the seller at the lowest possible price, and then reselling the property to another for the greatest possible advance or profit to the so-called agent, instead of for the benefit of the owner. If no advantage is taken of the seller and he is aware of the facts in the case, of course a contract of this kind can be legally made; and we need not now determine whether or not the court erred in refusing to nonsuit the plaintiff's case, because it is only necessary for a plaintiff to prove his case as laid to avoid nonsuit.

1. We think it evident that in this case the court erred in considering the contract as if it were confined to the written memorandum which was introduced in evidence. It is apparent to us that even if this writing was part of the contract between the parties, it could only be a part. Parol evidence is indispensable to complete the contract, if any. The plaintiff conceded this by the amendment he offered. Without parol evidence it did not appear that any agreement whatever was made with the plaintiff, or that it was not made with some one else. The remarks made by the court, of which complaint is made by the plaintiff in error,

were prejudicial because they tended to intimate to the jury that the written memorandum was the entire contract and not subject to be varied by parol evidence. The court did not err in the admission of evidence; because parol evidence is permissible either to explain ambiguities in written contracts, or to determine, where a writing is ambiguous or incomplete, whether such writing in fact indicates a contract or a mere memorandum,—of itself raises the presumption of an agreement between the parties, or manifests a mere tentative proposition on the part of one of the parties.

2. A contract may be partly in writing and partly verbal. Such was the contract, if any was made, in the present instance. In such a case all evidence tending to show what the contract in its entirety really was should be admitted, as well as all evidence tending to show that there was no agreement in the same sense between the parties alleged to have contracted.

3. Complaint was made in the second ground of the motion that the court, in the presence of the jury, expressed an opinion upon the evidence. The remark of the judge, made upon a motion to direct a verdict, was: "I don't see where there is any evidence entitling the defendant to go to the jury at all; I think I will be compelled to direct a verdict for the plaintiff." It is insisted that although the court afterwards overruled the motion and submitted the case to the jury, this remark in the presence of the jury was calculated to unlawfully influence and prejudice the jury against the defendant. A trial judge, in ruling upon the admissibility of evidence, must be allowed at least such latitude of expression as will render his meaning clear and unmistakable to counsel, who are required to be governed thereby, but language likely to be prejudicial in its effect upon the rights of either party should be studiously avoided, unless the ruling being made is necessarily the conclusion of the case. Where the language of the court, in rulings made during the trial, clearly depreciates the contention of either party, and yet the evidence, supporting such insistence, is permitted to go to the jury, any possible injurious effect should be removed and the jury should be so instructed thereafter (either in the charge or prior thereto) as to leave such contention in as fair a light before the jury as if such remarks had not been made in their hearing. In this case there is a manifest conflict between the parties as to whether any contract was made. The is-

sue is only determinable after the credibility of the witnesses has been passed upon by the jury; and this the jury must do for themselves, without any—even the slightest—external suggestion. Where conflict is acute and the parties are sharply at issue on the pivotal question in the case, even a feather's weight might cause the evidence for the plaintiff to overbalance that of the defendant, or vice versa.

For this reason the remark of the court in the hearing of the jury, "I don't see where there is any evidence entitling the defendant to go to the jury at all," after the defendant had testified and in her evidence had flatly contradicted plaintiff's claim of agency, was obliged to have been damaging to the defendant. It matters not that the pleadings were afterwards amended. If the jury were in doubt as to who had testified truly,—the plaintiff's bookkeeper when he swore that Miss Martin employed Thrower to sell her home, or Miss Martin when she testified equally positively that she never employed him at all,—and were seeking for some means of solving the doubt (as they must), it is certain that even the slightest intimation from the bench as to the judge's views would be most potential, if indeed it did not furnish an absolutely conclusive and easy solution of the problem that confronted them. When, therefore, the judge remarked, "I don't see where there is any evidence entitling defendant to go to the jury at all; I think I will be compelled to direct a verdict for the plaintiff," the jury could hardly fail (especially as there was no reference to the remark thereafter, or explanation of it made to the jury) to be first impressed with the idea that the defendant had no case. The fact that thereafter the court finally allowed the case to be submitted might modify that impression but little more than to change that opinion to one that the defendant's position, as compared with the case for the plaintiff, was at least very doubtful. In the absence of any statement by the judge that the language used in finally passing on the motion to direct a verdict for the plaintiff was such as to show the jury that the expression of the court's opinion was immature, and his view of the case had been changed, or of any specific and appropriate instruction to them, in his charge, that his remark should have no influence on their decision, for the reason that the court's opinion as expressed had undergone a change and he now submitted to them the issue upon which he ad-

dressed himself to counsel, we are obliged to hold that the language was an incident of the trial so damaging to the defendant as practically to preclude any defense offered in her behalf. While some latitude in expression must necessarily be allowed a trial judge in his rulings, in order that they may be intelligible, our observation leads us to the conclusion that the far better practice is to require motions for nonsuit, and motions to direct verdicts, to be made in the absence of the jury. The enforcement of a rule requiring a request for the withdrawal of the jury by the party about to make such motion and the grant of such request will, in our experience, leave the court and counsel free to discuss, without any embarrassment whatsoever and in unambiguous language, every phase of the question with the decision of which the jury is not concerned. The complete liberty of speech on the subject of the evidence, allowable to the judge in the absence of the jury,—when he is no longer required to be dumb as to what has been proved,—is frequently helpful alike to court and counsel in settling the issues involved. The remark made by the court in this case, if the jury had not been present, would have served, as it did, to bring out an amendment to the plea, satisfying the judge (as he seems to have been convinced) that the defendant's defense was good and entitled to go to the jury on equal terms with the plaintiff's case. But the statement of the judge (to put it mildly), that he had doubts whether there was "any evidence entitling the defendant to go to the jury at all," certainly disparaged the defendant's defense, and, by comparison, gave greater weight to the plaintiff's contention.

4. In the third ground of the motion it is alleged, that the court erred in expressing, in the presence and hearing of the jury, an opinion as to the effect of the following written memorandum introduced in evidence by the plaintiff, to wit: "Lot 30x90, No. 11 Williams St. I want $3,500 net. Clara Martin;" in that the court stated in the presence of the jury: "I think this paper shows that plaintiff was the agent of defendant, and was authorized to sell the property for $3,500 net." From the note of the judge to this ground, it appears that this was said before the defendant filed her special plea alleging that the memorandum was obtained by fraud, and that after this amendment to her answer was filed, the court submitted the question to the jury. We do not think that this fact affects the matter. Without any amend-

ment, the defendant had already filed an answer in which she denied paragraphs 2 and 3 of the petition, as well as all of the other paragraphs thereof. These paragraphs are as follows: "M. L. Thrower is a real-estate agent doing business in said county, and, as agent, he had placed in his hands for sale by defendant a certain lot in the city of Atlanta, known as No. 11 Williams street." "Defendant authorized him to sell said lot for thirty-five hundred dollars net." Under this denial, we do not think that the amendment to the plea, setting up the fact that the memorandum was obtained by fraud, was necessary, to raise the issue that the defendant had never contracted at all with Thrower to sell her property for her. The amendment was at most but an amplification of the defendant's original plea. It was conceded by both parties that the contract rested partly in parol, and that the written memorandum was only a part of the contract. The effect of the defendant's original answer was to say: "I never employed Mr. Thrower as my agent to sell my property; and the memorandum which he says was addressed to him, and says gave him authority to sell the lot described therein, was well understood by him at the time as being a mere statement of the least figure I would take for my property, if, after consideration, I should determine to sell." The amendment in effect speaks thus: "If you believe, from the memorandum and the testimony of what transpired, that a contract was entered into between us which would otherwise be valid, the agreement is nevertheless void, because it was fraudulently obtained." The court has the right to construe the written portion of a contract; it is its duty to do so; but it is not for the court to construe any part of the contract which depends, for existence and completeness, upon parol testimony as to facts which are in dispute. Ambiguities in written contracts, and the determination of the terms of a contract dependent upon parol evidence for its existence, are for the solution of the jury. We think that our learned brother of the trial bench overlooked the fact that the memorandum required parol evidence not only to show the employment of the plaintiff, but really to show that he was entitled to be a plaintiff, when he ruled that "this paper shows that plaintiff was the agent of defendant, and was authorized to sell the property for $3,500 net." We do not think that the words "I want $3,500 net" are conclusive as to an absolute power of sale, or indicate, beyond any

other supposition, that the defendant, if she had determined to sell, might not be willing to receive more, or perhaps even less, than $3,500 for her property.

5. The judge should have charged in accordance with the written request preferred in behalf of the defendant, or, in lieu thereof, should have instructed the jury in his own language upon the subject of the mutual assent necessary to create a contract. Under the evidence in this case, the instruction was especially necessary. A contract resting in parol must be assented to by both parties in the same sense. Mutual assent is assent to the same thing in the same sense, under a common understanding of the stipulations agreed to.

6. We think, too, that the court should have charged the jury, upon the defendant's written request, that the burden of proof was upon the plaintiff to prove that there was a contract, and that it devolved upon him to establish, by a preponderance of the evidence, that his mind and that of defendant met upon the contract sued upon, and that they both assented to it in the same sense.

7. The evidence did not support the verdict for the plaintiff, under the allegations in his petition and the amendment thereto. It was therefore unwarranted, and a new trial should have been granted.                                    *Judgment reversed.*