### 11333.    ANSLEY *v.* WESTBROOK & McDONALD.

PER CURIAM.  The petition in this case, in which it was sought to recover a commission for procuring a purchaser of the defendant's real estate, set out a cause of action, and it was not error to overrule the general demurrer.

*Judgment affirmed.  Broyles, C. J., and Bloodworth, J., concur.  Luke, J., dissents.*

DECIDED JULY 15, 1920.

Complaint; from city court of Americus — Judge Harper. January 17, 1920.

*Hixon & Pace,* for plaintiff in error, cited: 139 *Ga.* 287; Id. 294; 88 *Ga.* 327; 81 *Ga.* 704; 71 *Ga.* 608; 46 *Ga.* 280; 114 *Ga.* 208, 221; 129 *Ga.* 479; 12 *Ga. App.* 260.

*Shipp & Sheppard,* contra, cited: 129 *Ga.* 479; 139 *Ga.* 283.

LUKE, J., dissenting.  Westbrook & McDonald, real-estate brokers, sued Ansley for commissions on a written contract whereby he placed with them as sole agents for a term of fifteen days, from April 16, 1918, the date of the contract, a city lot for sale for $7,000, on a commission basis of 5% to them.  The petition alleged: that on April 29, 1918, plaintiffs procured a customer who, upon their agreeing to pay him $50 out of their commissions, thus making the price $6,950, contracted to take the place; that they secured a check from their customer for $500 to be paid to Ansley for the purchase of said property, and secured a written contract signed by H. B. Seal, the purchaser, and that they offered Ansley the $500 and asked him to sign the contract approving the sale, and he refused either to sign the contract or pay them their commission.  This contract (attached as an exhibit to the

petition) was dated April 29, 1918, and was signed by Seal, and, after reciting that Ansley had received of the buyer $500 as part purchase-money on the city lot, set out that said property was sold, " subject to approval of vendor and titles being good or made good within a reasonable time, for the sum of $6,950, to be paid cash upon completion and investigation and approval of title. " Under the signature of the purchaser was written, " I hereby approve of the above-mentioned sale on the terms and conditions named, and agree to pay Westbrook & McDonald, on the date the formal transfer is made, a commission of $300.00." Below this was left a line for the seller's signature, which was never signed by the seller.

The petition was demurred to generally and specially, and, after amendments had been allowed, all demurrers were overruled. The first amendment was in substance that after the purchaser offered to buy for $6,950, the plaintiffs went to the defendant on April 30, 1918, and acquainted him with the fact that the $50 necessary to make the consideration $7,000 (as per contract) would be paid by the petitioners; that the said Ansley agreed to the same, but asked for a few days delay, in order that he might obtain another house for himself to move to, and that the terms of sale were all satisfactory and not objected to at that time by Ansley, and that the petitioners were advised that he would comply and only wanted a few days to obtain another house. The other amendment was, in effect, that Ansley requested time to look for a house, as set out in the previous amendment, and that  the purchaser secured by the petitioners remained ready, willing, able, and anxious to buy and take the property as set out, and that Ansley waited until May 3, 1918, when he finally refused to sell the property or pay commissions. The plaintiffs alleged that it was a universal custom, and that the petitioners and Ansley contracted with a view to the custom, that upon the sale of real estate, when the parties have agreed on the purchase-price, a small amount is paid down on a contract signed by the seller and purchaser, and the purchaser is then allowed time to employ an attorney and have the title to the property investigated, and, after the title is approved, the trade is consummated by payment of the remainder of the purchase-money and execution of deeds to the property.

32

The original petition was subject to general demurrer. Amendments were offered and allowed, and demurrer was renewed to the petition as amended. The cause of action as amended rested on the proposition that the brokers had induced their customer to agree to purchase the property in question upon certain terms and conditions, and that their principal, after having agreed to these terms and conditions, refused either to sell or to pay the commission. No part of the original petition having been stricken, it is necessary to examine the entire petition as amended. It is alleged that the brokers asked Ansley to sign the contract approving the sale. It is then alleged that he refused to sign the contract. The first amendment, evidently referring to the contract proffered Ansley to sign, alleged that Ansley " agreed to same, but asked for a few days' delay to obtain another house to move to." It further states that " the terms of sale were all satisfactory and not objected to at that time by Ansley;" and that " petitioners were advised that he *would comply,* and only wanted a few days to obtain another house." The other amendment merely alleged, that " after Ansley requested time to look for another house, the purchaser remained ready, willing, able, and anxious to buy and take the property," and that after waiting until May 3, 1918, Ansley refused either to sell or to pay commissions. A specific written contract supersedes a custom as to all matters provided for in the contract. Therefore the alleged custom pleaded could not change the contract sued on; and to have recovered on the contract as originally set out, the brokers would have had to produce a customer ready, able, and willing to buy, and who actually offered to buy for cash, within fifteen days from the date of the contract, the described premises. *Emery* v. *Atlanta Real Estate Exchange,* 88 *Ga.* 321 (2) (14 S. E. 556).

Construing the pleadings against the pleader, I think that at most Ansley only agreed to make an agreement, and that a final and binding agreement was never entered into between him and the vendee. " The purchaser produced by the broker and the principal of the latter must come to a final, binding agreement on the terms of the transaction. The making of a mere preliminary or tentative agreement, which is not binding on the parties and which is not carried into effect, does not give the broker a right to com-

mission." *Payne* v. *Ponder,* 139 *Ga.* 287 (77 S. E. 35). I think it was error to overrule the general demurrer to the petition.