## 24433. BIGHAM *v.* BANK OF MADISON.

Decided August 15, 1935.

*J. K. Jordan,* for plaintiff.   *Miles W. Lewis,* for defendant.

MacIntyre, J.  Mrs. Mary A. Bigham brought an action against the Bank of Madison, to the June term, 1934, of the superior court of Morgan County, to recover $12,500 for an alleged breach of its contract to convey certain land to the plaintiff.  The defendant demurred to the petition generally and specially, and, without passing upon the special demurrers, the court sustained the general demurrer and dismissed the petition.  The correctness of this judgment is the sole question for determination.

Omitting some of the formal allegations, the petition, by paragraph, is substantially as follows:

2.  On August 2, 1927, the plaintiff and the defendant entered into a written contract whereby the bank agreed to sell, and the plaintiff to buy, a described tract of land containing "six acres more or less," located in Madison, Morgan County, Georgia.  We quote from the contract as follows:  "The purchase and sale price mutually agreed upon is ten dollars and other valuable considerations payable as follows:  Two hundred dollars this day tendered and received as part of the purchase-price, and confirmation of the purchase and sale of the within described property, by the parties hereto, under conditions herein named, and $2500 on or before January 1st, 1929, with interest at the rate of 8 per cent. per annum after maturity.  Upon a minimum payment of $500 on or before January 1st, 1929, this loan will be extended for six months with interest at 8 per cent. per annum, interest to be rebated on payment prior to maturity.  Possession upon exchange is formal.  Taxes payable by seller through 1927.  Premiums prorated and insurance continued and maintained by buyer with loss payable to seller as his interest may appear.  Formal papers to be exchanged promptly.  Acreage six acres more or less.  In confirmation of the above purchase and sale agreement, we each hereunto set our hands and affix our seals.

"Witness.  W. P. Bearden, Pres. (L. S.), Seller, Mrs. Mary A. Bigham (L. S.), Buyer."

3. "The property so contracted for and hereinafter referred to as the Turnbull property had been acquired by defendant bank on December 17, 1927, from one R. W. Parker by deed of conveyance, made, however, to secure Parker's indebtedness to said bank."

4. "On July 30th, 1927, said bank agreed with Parker, the real owner, to convey said Turnbull property to plaintiff by deed in fee simple for the consideration of $2500, payable one year from date by security deed and the prepayment of her $200 interest."

5. "Thereupon plaintiff agreed with said Parker to exchange for said Turnbull property all her one-fourth interest in" described lands in Cobb County, Georgia, "and accordingly plaintiff did convey all her interest in said lots to said Parker by warranty deed dated August 17, 1927, whereby she completely divested herself of all her property therein, of the value of $12,500."

6. "All of which plaintiff did in reliance upon defendant's obligation to convey to her said Turnbull property, and thereupon said defendant bank did contract with plaintiff as hereinbefore more fully set forth in paragraph 2 of this petition."

7. "And plaintiff, in compliance with her said contract with said bank, on August 10th, 1927, did execute and deliver to it her security deed dated that day and recorded in Book 66, page 516, of the land records of said county, whereby she conveyed to said bank said Turnbull property as security for the payment of the consideration upon which it was to convey said property to her. And plaintiff paid to said bank $200 interest in advance and complied with all her obligations under said contract, and defendant was thereby obligated simultaneously to execute and deliver to plaintiff a deed conveying to her said Turnbull property in fee-simple."

8. "Yet said bank did not deliver to plaintiff said deed, but refused to do so, except upon the wholly unjustifiable condition imposed by it that plaintiff should pay to its attorney the sum of $20 as a fee for the preparation of such deed, notwithstanding no such obligation was imposed upon her by said contract or by law, and notwithstanding the express agreement between herself and said R. W. Parker was that each party should furnish his, her, and its own papers free of cost to the other."

9. "A copy of one of defendant bank's letters demanding prepayment of said attorney's fees as a condition to delivery of its deed to the Turnbull property is as follows: 'Madison, Ga., Sept. 8th,

1927. Mrs. E. W. Bingham [Bigham?], Atlanta, Ga. Dear Mrs. Bingham: We are writing you about bill rendered by Col. E. W. Butler that we gave Mr. Parker to present when you signed the note to us. Please take this matter up with Mr. Butler right away, as I have instructions to send you warranty deed after this account has been settled. Your prompt attention will be appreciated. Yours very truly, E. S. Atkinson, Cashier.'"

10. "Said security deed so made by plaintiff in conformity with her contract matured January 1st, 1929."

11. "Immediately upon such maturity defendant bank, notwithstanding the fact that it had never delivered plaintiff any deed, did by virtue of a power contained in the loan deed so executed by plaintiff authorizing it to sell said property after advertising the sale once a week for four weeks, proceeded to advertise the same on January 4th, 11th, 18th and 25th, 1929, in the Madisonian, a newspaper published in said county, and defendant did on January 25th, 1929, being the very day on which the last advertisement appeared, professed to sell to itself the said bargained Turnbull property in the exercise of said power, that is to say, it sold to its president, Bearden, who immediately reconveyed said property to defendant bank."

12. "Said sale was void, because the same was not advertised once a week for four weeks before the date of said sale, and because defendant had never consummated its contract with plaintiff by delivering to her any deed to said Turnbull property."

13. "On information and belief, plaintiff avers that on or about March 2, 1928, after the execution of said contract of sale . . and before the maturity of the note given by her in compliance therewith, defendant bank negotiated with one Central of Georgia Railway Company for the sale . . of a valuable and essential part of said Turnbull property [described], and likewise, intervening the last-named dates, defendant bank negotiated with one Mrs. Obear touching the sale to her of the residue of said Turnbull property, all at a higher price than so contracted for with plaintiff."

14. "And therefore said bank desired to avoid its obligation to plaintiff to convey to her said Turnbull property, which it sought to accomplish by said ostensible foreclosure."

15. "Defendant bank did consummate said negotiations by con-

veying to said railway company said part of the Turnbull property by deed dated June 21, 1929, and thereafter conveyed to the said Mrs. Obear the residue thereof."

16. "Any protest or objection on plaintiff's part to the bank's foreclosure under power of sale would have been ineffectual and wholly nugatory."

17. "By reason of the last conveyances specific performance is impossible."

18. "Said Turnbull property at the time aforesaid was of the reasonable value of $15,000, and plaintiff's loss is that sum less the encumbrance by said security deed of $2500."

19. "By reason of the facts aforesaid, defendant has damaged plaintiff in the sum of $12,500, increased by a sum equivalent to seven per cent. per annum from August 10th, 1927, the date of defendant's breach of its contract."

On August 3, 1934, the plaintiff amended her petition by adding thereto certain paragraphs which are substantially as follows:

20. "Plaintiff did not enter into possession, because by the terms of said contract set forth in paragraph 2 of her petition she could not enter into possession of the land therein bargained for until the exchange of formal papers, that is to say, until defendant delivered to her its deed conveying title thereto, and said land remained in the possession and control of said Parker and said defendant bank until it was so foreclosed."

21. "The formal papers so contracted for were, and were meant and understood by plaintiff and defendant to be, a deed of conveyance from defendant to plaintiff and a loan deed simultaneously executed from plaintiff back to defendant bank, both conveying the land so bargained for, and plaintiff's note as specified in said contract secured by such loan deed."

22. "Had defendant conveyed said land to plaintiff as it agreed to do, she would have paid promptly her said note to it upon its maturity, being ready, willing, and able to do so."

23. "The agreement with reference to expenses of preparation of conveyances set forth in paragraph 8 of said petition was made by said Parker who was the authorized agent of defendant bank for that purpose, and this agreement was ratified by said bank in receiving and keeping plaintiff's $200, as alleged in paragraph 7 of the petition. Furthermore, said demands of $20 (being those re-

ferred to in paragraph 9) for drawing the deed of conveyance contracted for was grossly excessive, being four times as much as such service was worth. Said bank neither paid nor was liable to said attorney in any sum for drawing any deed to plaintiff whatsoever, and no other services were rendered by him in said transaction."

24. "Such unjust demands by defendant were a mere pretext for repudiating its agreement to deliver to plaintiff a deed to said property, the real reason being that defendant desired to sell said property for a much larger price than that so contracted for, and which it afterwards did, as alleged in paragraph 13 of said petition. And by such unjust demand defendant did illegally repudiate its said contract with plaintiff, and did thereby proclaim that tender of payment by plaintiff would be refused by it."

25. "And for the reasons set forth in the preceding paragraph, any protest or objection to said bank's foreclosure would have been ineffectual and wholly nugatory, as alleged in paragraph 16 of said petition."

On August 11, 1934, the plaintiff finally amended her petition by adding to paragraph 8 the following words, to wit: "Said agreement with reference to expenses of preparation of said papers was a part of the consideration of said contract."

The defendant demurred to the petition as follows: (1) It sets forth no cause of action. (2) It "shows on its face that the defendant fully complied with any contract to sell the Turnbull property to plaintiff." (3) "Plaintiff is estopped to claim that the property was not conveyed to her; as she gave plaintiff [defendant?] her warranty deed thereto to secure a debt of $2500 subsequent to the contract set forth in paragraph 2." (4) It "shows a legal sale under the power contained in such security deed, divesting the title of plaintiff and revesting it in defendant." (5) It "fails to show any tender by plaintiff to defendant of the debt secured by said security deed, either before or after the sale under the power in said deed." (6) It "shows that by the execution of a security deed from plaintiff to defendant on August 10th, 1927, the contract sued on in paragraph 2 was rescinded and there was a complete novation thereof and the substitution of another contract therefor, which latter contract plaintiff has failed to comply with by payment or tender of the debt due defendant." (7) "The alleged contract . . on which the suit is based shows on its face

that it is not under. the hand and seal of the defendant." (8) "The alleged contract shows on its face that it was not under the seal of defendant, and that therefore this action, being commenced more than six years after August 10th, 1927, the date of the alleged breach thereof, is barred by the statute of limitations." (9) "The petition shows that the plaintiff has been guilty of laches and negligence and is now estopped to assert her alleged damages."

The sale contract of August 2, 1927, provided that "formal papers" were "to be exchanged promptly." "The formal papers so contracted for were, and were meant and understood by plaintiff and defendant to be, a deed of conveyance from defendant to plaintiff and a loan deed simultaneously executed from plaintiff back to defendant bank, both conveying the land so bargained for, and plaintiff's note." Paragraph 21 of the petition. August 10, 1927, was the time for exchanging "formal papers." On that date the plaintiff performed its obligations under the sales contract, but the defendant did not. The plaintiff could have elected either to affirm or disaffirm the contract. She chose to affirm it, but, apparently in order to give the defendant an opportunity to comply with it by delivering its deed on January 1, 1929, in accordance with the terms of the contract, she waited until after that date to file suit. The plaintiff did not pay the defendant the purchase-money stipulated for in the sales contract, and the defendant made the plaintiff no deed, but advertised the property under the power of sale in the security deed and sold it. It will be observed that the present action was brought to the "June term, 1934," of the superior court of Morgan County—long after the cause of action accrued, and long after the property was sold, bought in by the defendant, and resold. It appears, however, that the plaintiff finally bases her right to recover upon the alleged breach of the defendant in failing to make her the warranty deed on or before January 1, 1929: "Agreements are mutual and dependent where performance by one party is conditioned on or subject to performance by the other, and a party who seeks performance must show performance or a tender of readiness to perform on his part." 13 C. J. 567, § 538. See, in this connection, *Pusey* v. *McElveen Commission Co.*, 93 *Ga.* 773, 775 (21 S. E. 150), and cit. "Where two persons entered into a written contract, in which one acknowledges the receipt of a portion of the purchase-money of a described lot of land,

and agrees that upon the payment of a specified sum as the balance of the purchase-money by a given date he will make the other party a deed to the property, and the latter binds himself 'to comply with the above contract by date named,' these are mutual and dependent covenants." *Morris* v. *McKee, 96 Ga.* 611 (2) (24 S. E. 142). "On the sale of land, in the absence of an express agreement, the payment of the purchase-money and the delivery of the title deed are concurrent acts. 1 Sugd. Vend. [239, 241]; Lennett *v.* Sheehan, 27 Minn. 328. But if the sale fails of consummation, the vendee, in order to recover in an action for breach of the contract, must allege and prove an offer of performance on his part by a tender of the purchase-money, unless that tender was waived." *Emery* v. *Atlanta Real Estate Exchange, 88 Ga.* 321, 327 (14 S. E. 556). "Where the relation between the owner of land and another is . . that of proposed vendor and purchaser, if the purchaser seeks to obtain specific performance of a contract of sale for cash, or to recover damages for an alleged breach of such a contract by the vendor by refusing to make a conveyance; the general rule is that a tender of the cash must be made, unless it is waived." *Smith* v. *Tatum,* 140 *Ga.* 719 (2) (79 S. E. 775). Paragraph 22 of the petition avers that "had the defendant conveyed said land to plaintiff as it agreed to do, she would have paid promptly her said note to it upon its maturity, being ready, willing, and able so to do." If this averment can be treated as showing a tender, it was conditional, and therefore not a valid tender. *DeGraffenreid* v. *Menard,* 103 *Ga.* 651 (30 S. E. 560); *Elder* v. *Johnson,* 115 *Ga.* 691 (2) (42 S. E. 51); *Morris* v. *Continental Ins. Co.,* 116 *Ga.* 53 (42 S. E. 474); *Terry* v. *Keim,* 122 *Ga.* 43 (49 S. E. 736); Code of 1933, § 20-1105. The plaintiff was standing squarely upon the contract, and final performance of it on her part was to be payment of the purchase-money. Under the petition, measured by the decisions cited, we think it was essential that the plaintiff offer to perform her obligation under the contract before she could maintain the action for damages; and her obligation being to pay the purchase-price, we think she should have made a valid tender of it. Never having tendered the purchase-price of the land to the defendant, and there being nothing, in our opinion, which excused her from so doing, we hold that the trial judge properly sustained the general demurrer and dismissed the petition.

Before concluding this opinion, we will state that we do not think that the sale,under the power in the security deed was void because the property was sold on "the very day on which the last advertisement appeared." This conclusion is based upon the allegations of paragraph eleven of the petition, construed in the light of the fact that sales under powers in mortgages and security deeds are not subject to the strict requirements of regular judicial sales.

Having passed upon what we consider the controlling question in the case, we deem it unnecessary to consider every paragraph of the general demurrer.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*