(27 App. Div. 117.)

MONTGOMERY et al. v. KNICKERBACKER.

(Supreme Court, Appellate Division, First Department. March 11, 1898.)

1. REAL-ESTATE BROKER—RIGHT TO COMMISSIONS.

In order to entitle a real-estate broker, employed merely to find a purchaser for specified property, to commissions, he must produce a purchaser ready and willing to enter into a contract on terms satisfactory to the principal, and the mere fact that he effects a prospective or contemplative agreement, which, through no fault of the principal, never becomes an actual one, will not serve.

2. SAME.

A real-estate broker, employed to sell property, procured from a prospective purchaser the following signed memorandum: "I authorize Mr. M. [the broker] to offer $220,000 for the house of Mr. K. [the principal], Cor. 64th St. & 5th Ave." In an action against K. to recover commissions, the broker claimed that this memorandum was a contract which K. could enforce. Held, that it was at most a mere provisional proposition, leaving open essential details, and was too vague and uncertain to form the basis of an action.

Action by Richard M. Montgomery and another against Helen N. Knickerbacker. Motion for new trial on exceptions, ordered to be heard in the first instance at the appellate division. New trial denied.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

E. B. Whitney, for appellants.
W. R. Bronk, for respondent.

McLAUGHLIN, J. This action was commenced against one Henry Knickerbacker, but, he having died before trial, it was revived and continued against his executrix, to recover commissions alleged to have been earned by the plaintiffs, real-estate brokers, in procuring a purchaser for certain real estate. The plaintiffs based their right to recover upon a contract alleged to have been made by them with the defendant's testator, in and by which he promised to pay to them a commission of 1 per cent. of the purchase price for procuring a purchaser of his residence situate in the city of New York,

and services rendered by them in pursuance thereof in procuring a purchaser who was ready, able, and willing to purchase at a price which was satisfactory to the testator, and who entered into a contract with him. The answer interposed denied all the material allegations of the complaint. Upon the issue thus formed the parties went to trial, and it there appeared that in June, 1894, Henry Knickerbacker, defendant's testator, employed these plaintiffs to negotiate a sale of certain real estate situate on Fifth avenue and Sixty-Fourth street in the city of New York, and that thereafter these plaintiffs, in pursuance of that employment, endeavored to procure a purchaser, but nothing was accomplished until the 27th of July of that year, when, as a result of negotiations had with one John T. Martin, one of the plaintiffs (Montgomery) was authorized to make an offer for the property, as appears from the following memorandum:

"I authorize Mr. Montgomery to offer two hundred twenty thousand ($220,000) dollars for Mr. Knickerbacker's house, Cor. 64th St. and 5th Ave.
"July 27th, 1894.                                                    John T. Martin."

The next day Montgomery communicated with defendant's testator with reference to this offer by telegraphing him as follows:

"Am authorized in writing by Mr. Martin, Sr., to offer two hundred twenty thousand dollars for house and fixtures; payment in cash, or one-year mortgage for one hundred twenty thousand (120,000) dollars, balance cash, buyer's option. Offer good only for to-day. If you want to sell to them, advise early acceptance. It was difficult to obtain this offer because of lack of harmony."

This telegram was confirmed by a letter written on the same day by Montgomery, in which he informed defendant's testator that a contract had been prepared and taken to Martin, but that he had declined to execute the same, but that by the following Monday plaintiffs hoped "we shall be able to have the contract signed." In this respect they were disappointed, because Martin thereafter not only refused to sign a contract, but also refused to have anything further to do with the contemplated purchase. As soon as plaintiffs ascertained this, they delivered the memorandum, signed by Martin, to the defendant's testator, and requested him to pay the commissions alleged to have been earned by them in effecting a sale. Defendant's testator refused to pay, and thereupon this action was brought to compel him to do so.

The trial court, at the close of plaintiffs' case, dismissed the complaint, and in so doing we think no error was committed. The plaintiffs' right to commissions depended on their bringing the buyer and seller to an actual agreement,—not a prospective or contemplative one. They were required to produce a purchaser who was ready and willing to enter into a contract on terms satisfactory to their employer, and until they had done that they were not entitled to commissions. Sibbald v. Iron Co., 83 N. Y. 378; Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781. This they did not do. The defendant's testator was, so far as the evidence discloses, willing to sell on the terms proposed, but Martin was not willing to purchase. It was not the fault of defendant's testator that the sale was not made. Indeed, it is not even suggested that any act or omission

on his part in any way prejudiced or affected the successful consummation of the negotiations entered into by the plaintiffs with Martin. The plaintiffs, therefore, were not entitled to commission.

But it is urged by appellants' counsel that the memorandum signed by Martin was a contract which defendant could enforce. We do not think so. It was not so intended or understood by any of the parties. An action could not be successfully maintained upon it to compel Martin to purchase. At most, it was intended as a provisional proposition, made in the course of the negotiations, and, if accepted, left open other essential details for further discussion and settlement. It is vague and uncertain in many respects. It is impossible to determine from it on what corner of the street the property is situate, or in what city or state the street is. Indeed, it is impossible to determine what part of the testator's property the authorization was intended to cover; and this is important, in view of the fact that the property he owned covered 100 feet on the avenue by 150 to 175 feet on the street, while one of the plaintiffs testified that the lot proposed to be sold was 100 feet by 30 feet. In many other respects the memorandum failed to contain provisions necessary and essential to make it a legal contract which the defendant or her testator could enforce against Martin. This the plaintiffs understood and appreciated. This is apparent from an inspection of the proposed contract which they thereafter prepared and endeavored to have Martin execute. In this proposed contract the time of payment and the character of the mortgage are not specified. Blank spaces were left for that purpose, to be filled in, presumably, when the parties had agreed upon these subjects. But, if it be conceded that the contention of appellants' counsel as to this memorandum is correct, then the plaintiffs would not be entitled to recover, because there is no proof of the acceptance of it by defendant's testator. The only proposition submitted to him, so far as appears, was the one contained in the telegram from Montgomery, above referred to, and that proposition was not the same as the one contained in the Martin memorandum. And, indeed, there is no proof that defendant's testator ever accepted the proposition contained in the telegram. The only proof offered on that subject is a letter written by Knickerbacker on the 29th of July, and it will be observed that in this letter he said:

"I will go down by early train to-morrow morning. * * * Will go direct to my office, and 'phone you to come there, and then we will conclude what to do."

This did not constitute an acceptance of the proposition. On the contrary, it clearly and conclusively demonstrates that the proposition was not accepted, but was held open until further conference could be had. The negotiations failed, not by reason of any fault on the part of the seller, but simply because plaintiffs did not procure a buyer who was ready and willing to purchase upon the seller's terms.

The case was correctly disposed of by the trial court, and the exceptions should be overruled, and the motion for a new trial denied, with costs. All concur.