## PAYNE *et al. v.* PONDER.

A real estate broker brought suit against two defendants, alleging in brief as follows: The defendants represented that they were the owners of certain described real estate, and authorized him to sell it, agreeing to pay him a commission of five per cent. on the first $2,000 of the purchase-price, and two and one half per cent. on the price in excess of that amount. Plaintiff secured a written offer from certain named persons, who agreed to pay a stated amount on certain named terms. The defendants accepted the offer in writing, and agreed to pay him commissions. There were no duties or obligations devolving upon him, other than to secure purchasers ready, willing, and able to buy upon the terms stipulated by the defendants, "which petitioner did;" but the defendants refused to pay the commissions, stating that the trade did not go through. *Held,* that the petition was good as against a general demurrer.

JANUARY 18, 1913.

Complaint. Before Judge Bell. Fulton superior court. October 26, 1911.

John M. Ponder brought suit against J. Carroll Payne and E. Woodruff, alleging in substance as follows: The defendants represented to the plaintiff that they were the owners of certain real estate located at the southeast corner of Marietta Street and North Avenue in the City of. Atlanta, and listed it for sale with the plaintiff, who is a real estate agent, authorizing him to sell it, and agreeing to pay him a commission of five per cent., on the first $2,000, and two and one half per cent. on the excess of the purchase-price above that amount. Plaintiff obtained a written offer from two proposed purchasers, and this was accepted by the defendants. The offer and acceptance were as follows:

"Atlanta, Fulton County, Ga., April 21st, 1911. We hereby agree to pay J. Carroll Payne & E. Woodruff on the following terms: Purchase-price $48,387.50, cash payment $16,387.50, balance to be divided into two installments, payable after date fixed for making each payment, as follows: $16,000.00 on or before one year, at 6% interest, and $16,000.00 on or before two years, at 6% interest,—for the following described property, to wit: Located

on the southeast corner of Marietta Street and North Ave., and being in size as follows: 127.5x190.8x208.3x147;—also that property located on the northeast corner of Marietta and Harwell Place or Street, size 195.2x192x145.4x160, as per plat O. F. Kaufman, C. E., April 16, 1907.

"We have this day deposited with John M. Ponder, Real Estate Agent, 16 Auburn Ave., the sum of one hundred dollars, as a part of the above named purchase-money, to bind this trade, a reasonable length of time being allowed for the examination of titles by my attorney. If said titles are good, we agree to make settlement at once; but if said titles are not good or can not be made good within a reasonable length of time, the said cash payment is to be returned to us and this trade cancelled. It being agreed that no days will be allowed for the acceptance or rejection of this offer. [Signed] D. Rozinsky, Samuel Mann, Purchasers.

"We accept the above offer upon the terms and conditions therein named, and guarantee the titles to be good, and agree to pay John M. Ponder, Agent, a commission on the gross amount as follows: Five per cent. on amount up to $2,000.00 and two and one half per cent. on amount of $46,387.50. [Signed] J. Carroll Payne, E. Woodruff, Owners, by J. Carroll Payne."

In accepting the offer made by the customers procured by the plaintiff, the defendants agreed to pay the plaintiff the commissions above stated, but they have refused so to do. One of the defendants, Payne, in the presence of plaintiff, informed one of said purchasers that the trade "was off." The reason offered by the defendants to plaintiff for their failure to pay the commission was that the trade did not go through. "Under the terms of his contract with the defendant, his right to commission is not contingent upon the final consummation of the trade, delivery of the property, or payment of the purchase-price; that there were no duties or obligations devolving upon him other than to secure purchasers ready, willing, and able to buy upon the terms stipulated by the defendant, which petitioner did." In closing the trade the purchasers paid $100 to the plaintiff, and this should be credited on the commissions due to him, leaving a balance of $1,159.69.

The defendants demurred generally to the petition. The demurrer was overruled, and the defendants excepted.

*Payne & Jones,* for plaintiffs in error.

*Etheridge & Etheridge,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The general rule as to when a broker has earned his commission is thus stated in the code: "The fact that property is placed in the hands of a broker to sell does not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Civil Code, § 3587. The petition alleged, that the broker procured two purchasers who made a written proposition to purchase on terms stated, and this was accepted in writing by the sellers, by whom he was employed; that "there were no duties or obligations devolving upon him other than to secure purchasers ready, willing, and able to buy upon the terms stipulated by the defendants, *which petitioner did*" (italics ours); and that, under the terms of his contract, his right to a commission was not contingent upon the final consummation of the trade, delivery of the property, or payment of the purchase-money. We might stop here and affirm the judgment by merely stating that these allegations, treated as true, are sufficient, under the terms of the section of the code, to withstand a general demurrer. The argument, however, has taken a wider range and gone into the question of the effect of entering into the written contract. It is therefore not amiss to make some additional observations on the subject.

There is no little confusion and conflict among the decisions as to when a real estate broker has earned his commission, the burden of proof, the effect of the making of a written contract between the parties, and other questions. Much of this has arisen from a want of clear and accurate consideration of principles, and following expressions used in some other decision, without keeping in view the facts on which it was based. Without intending to make an exhaustive statement, the following points most frequently arise for consideration in determining whether a real estate broker is entitled to recover from a proposed seller commissions: (1) What was the contract between him and his principal,—was it a general contract that the broker was to sell the property, or procure a purchaser for it; or did the contract contain special terms, such as that commissions were to be paid only on specified contingencies, or at certain times or from certain proceeds, or that the broker was to perform services additional to those implied in the

ordinary employment? If there were such special terms, they would modify the general rules applicable to the more usual form of employment. (2) Under a general contract of employment, what is the nature of a broker's duty, and when has he discharged his duty under his contract of employment? (3) When he sues for commissions, does the case arise upon a refusal by the property owner to accept a proposed purchaser and sell to him, or does it arise after a contract of sale has been made between the owner and the purchaser? (4) What burden of proof rests upon the broker?

A broker has been defined by Judge Story to be "an agent employed to make bargains and contracts between other persons, in matters of trade, commerce, or navigation, for a compensation called brokerage." In the absence of any stipulation to the contrary, the ordinary duty of a real estate broker to sell, or procure a purchaser, is performed when he has done the thing which he was employed to do, that is, has produced a purchaser ready, willing, and able to buy, and who offers to buy on the terms stipulated by the owner. The rule has sometimes been stated by employing such expressions as that the purchaser must be ready, willing, and able to "complete" or "consummate" the purchase. The real question as to the broker is whether he has fully discharged the duty resting upon him under his employment. If his principal rejects the purchaser or proposal, and the broker sues for his commission, the burden rests on him to show that he has discharged his duty to effect a bargain; and if no bargain was effected, that it was the fault of his principal, and not his own. To do this involves showing that the proposed purchaser was one with whom the principal should have contracted, and this includes not only readiness and willingness, but ability to do so on the part of the purchaser. In this connection see Alt *v.* Doscher, 102 N. Y. App. Div. 344, 347 (92 N, Y. Supp. 439).

At this point arises a division in the authorities. Some decisions in England and a few in America hold, that, even though the principal and the purchaser proposed by the broker enter into a binding executory contract of sale, as where some of the purchase-price is to be paid in installments at future dates, the broker has not earned his commission if the purchaser is not one able to carry out or perform the contract in full. The weight of authority in America is to the effect that the right of a real estate broker does

not depend upon the carrying out and fully performing of the contract of sale by the purchaser, but that where the purchaser presented by the broker is accepted by the vendor, and they enter into a binding, valid, and enforceable contract of sale, the broker is entitled to his commissions; and this right is not destroyed though the purchaser may fail or be unable to make deferred payments, or the contract may not be carried into full effect. 23 Am. & Eng. Enc. Law (2d ed.), 917, 923; Note to Riggs v. Turnbull, 11 Ann. Cas. 783, 786 (105 Md. 135, 66 Atl. 13, 8 L. R. A. (N. S.) 824); Moore v. Irvin, 89 Ark. 289 (20 L. R. A. 1168, and note, 116 S. W. 662, 131 Am. St. R. 97); Coleman's ex'rs v. Meade, 76 Ky. (13 Bush) 358. The broker is not an insurer of the purchaser's ability, if he is accepted as satisfactory by the principal and a binding contract of sale is made by the latter with him; but the broker is the agent of the seller, and as such is bound to act in good faith toward his principal. He can not fraudulently put off an insolvent person on his principal, and thus entrap him.

To fall within the rule above stated, the purchaser produced by the broker and the principal of the latter must come to a final, binding agreement on the terms of the transaction. The making of a mere preliminary or tentative agreement, which is not binding on the parties and which is not carried into effect, does not give the broker a right to commissions. 19 Cyc. 251, and citations; Condict v. Cowdrey, 139 N. Y. 273 (34 N. E. 781); Montgomery v. Knickerbacker, 27 N. Y. App. Div. 117 (50 N. Y. Supp. 128).

In some of the cases there is actual conflict with the rule above stated; in others the language employed must be considered in the light of the facts involved. Thus in McGavock v. Woodlief, 20 How. (U. S.) 221 (15 L. ed. 884), there was no valid, enforceable contract made between the principal and the purchaser furnished by the broker. In Hyams v. Miller, 71 Ga. 608, it was held that the contract between the owner of land and the broker was that the broker should not only find a purchaser for the owner's property, but make an actual sale of it upon the terms proposed by the owner; and that the carrying by the broker of a certain written proposition from a proposed buyer to the owner and the endorsement thereon by the owner of the word "accepted," followed by his signature, did not entitle the agent to commissions, where the trade was not completed because the proposed purchaser refused to

go further. The McGavock case supra, was cited. The authority to sell given to the broker in the *Hyams* case and the proposition involved was partly for cash and partly on a credit, and included provisions that the rents were to be transferred to the purchaser from the time he should make the cash payment, that the purchaser should make his own arrangements with the tenant in regard to possession, and that the purchaser was to "pay for papers." Perhaps these terms affected the decision as requiring something further to be done beyond the presentation and acceptance of the proposition. The agreement may have been considered as provisional, and not final, in view of the provision for making further papers and paying an amount in cash. The mere expression that a real estate broker is employed "to sell" property on a commission has not been generally held in America to mean that he is required to convey it, or guarantee or collect deferred payments. In *Odell* v. *Dozier,* 104 *Ga.* 203 (30 S. E. 813), it was held that "one who employs another as his agent to sell real estate is bound to pay such agent the agreed price for his services, if he procures a purchaser who enters into a written contract of purchase with the principal, satisfactory to the latter; and the liability of the principal to the agent is not affected by the fact that on account of the inability of the purchaser to comply with his original contract a new one is entered into between himself and the owner of the land." An examination of the record on file in that case shows that the agent procured a purchaser, with whom the owner entered into a written contract of sale. By its terms no cash was to be paid, but the purchaser gave certain notes and agreed to erect certain improvements on the land sold by a stated time. It provided that if the purchaser should perform his obligations and pay the notes by the time specified, and give certain additional notes, the owner agreed to execute and deliver to him a bond for title. Nothing further was necessary to be done at the time of making the contract before it took final effect as a complete executory contract. There was evidence tending to show that the purchaser failed to pay the notes given by him, and that the vendor made a new agreement with the purchaser.

In *Davis* v. *Morgan,* 96 *Ga.* 518 (23 S. E. 417), it was held: "Although it was incumbent on the plaintiff to show that he had procured a person ready, willing, and able to purchase on the terms

prescribed by the defendant, yet if the plaintiff in fact procured a person who was recognized, either expressly or tacitly, by the defendant as answering all these requirements, and the failure to complete the sale was due solely to the defendant's inability to make a good title to the land, the plaintiff would be entitled to his compensation as if the sale had actually taken place." In the opinion Chief Justice Simmons, after stating the general rule that the broker must show that he procured a person willing, ready, and able to purchase upon the terms prescribed by his principal, added: "but where it appears that the proposed purchaser was accepted by the principal, the burden is upon the latter to show that the purchaser was not able to comply with the contract." This was cited in *Phinizy* v. *Bush,* 129 *Ga.* 479, 486 (59 S. E. 259). Taken disconnected from the facts of the cases, this might seem to hold that the result of the acceptance of a proposed purchaser by the owner was merely to shift the burden of proof as to the ability of such proposed purchaser to comply with or perform the contract in full, —not to do what was necessary to pass beyond the tentative stage and put the contract into effect as a final and complete one—regardless of whether there was any misrepresentation or fraud by the broker, and regardless of whether after such acceptance a final and binding contract had been made between the buyer and seller. But that question was not directly involved in either case. In *Davis* v. *Morgan,* the owner refused to accept the proposed purchaser and contract with him; and in the *Phinizy* case, after the exchange of certain letters and telegrams, and the having of certain negotiations, the owner of the stock involved refused to sign a written agreement which the broker prepared. He contended that there was a time limit which had expired. At any rate, the present case is before us on the overruling of a general demurrer. It has not reached the point of determining the burden of proof. What is said above is sufficient to show that the demurrer was properly overruled. Further than this we need not go.

*Judgment affirmed.    All the Justices concur.*