8917. BREEDLOVE administratrix, *v.* WIREGRASS DEVELOPMENT COMPANY.

The court erred in directing a verdict, and in overruling the motion for a new trial.

DECIDED JANUARY 30, 1918.

Complaint; from Colquitt superior court—Judge Thomas. May 2, 1917.

*W. A. Covington, Pope & Bennet,* for plaintiff.

*J. W. Walters, Shipp & Kline,* for defendant.

LUKE, J. This case is fully stated in the report made when it appeared in the Supreme Court (*Toole* v. *Wiregrass Development Co.,* 142 *Ga.* 57, 82 S. E. 514) : "The plaintiff, John F. Toole, brought suit against the Wiregrass Development Company to recover the sum of $7,500 as commissions on sales of real estate during the years of 1910 and 1911. The petition alleged, in substance, as follows: In June, 1910, the plaintiff was conducting a real estate business at Macon, Ga. At this time plaintiff and defendant began negotiations looking to the employment of plaintiff by defendant, to handle and sell for defendant a lot of town property at Pecan City in Dougherty county, Georgia. The property was divided into numerous parcels, and it was in the contemplation of the parties that the parcels should be sold separately or together, and that it would probably take several months in order to complete the sale. In August, 1910, pursuant to the negotiations, defendant through its president and general manager, W. E. Aycock, telegraphed plaintiff to come to its office at Moultrie, Ga., to discuss with the defendant the making of the contract. In response to the telegram plaintiff went to defendant's office and came to an agreement with defendant, by the terms of which plaintiff was to move from Macon, Ga., to Pecan City, and was to remain there as a resident salesman and general agent of the defendant company, looking after and preserving the lands, improving, ad-

vertising, and selling the same as rapidly as possible. Under the agreement plaintiff was to receive no salary or compensation for his services, except commissions on the purchase-price of any and all of the lands sold by the company, plaintiff's commissions being 10 per cent. of the purchase-price of all sales made by him alone and independently of the efforts of other real estate agents and of defendant, and 5 per cent. upon any and all other sales of land made by the company while plaintiff continued at the work. In October, 1910, plaintiff removed from Macon to Pecan City and entered upon his duties under the contract. He continued to remain at Pecan City until September, 1911. During the time he was at Pecan City he faithfully discharged his duties under the contract, and vigorously advertised and pushed the sales of the parcel of land, carefully protected it and remained on it for the purpose of showing prospective purchasers over it, and gave his best efforts to the establishment of a post-office, schools, churches, and merchants in the town. During the months of October, November, December, January, and February, considerable portions of the lands were sold by the company to various persons, amounting to about $12,000; and in each instance, as soon as the sale was closed, the defendant paid the plaintiff, in accordance with its contract, 10 per cent. commissions on such sales as were made by the plaintiff alone, and 5 per cent. on all other sales. In the course of his advertising the lands and by correspondence, the plaintiff, in February, 1911, wrote to J. H. Ernest, of Albany, Ga., who was dealing extensively in lands in that vicinity, seeking to effect a sale of the entire tract of land to him. He did not reply to the letter in writing, but soon thereafter went to see the lands and began to consider the purchase. While continuing his efforts to sell the land, W. E. Aycock, the president of the company, notified the plaintiff in April, 1911, that he had hopes of selling the entire remaining portion of the land to Ernest, and suggested to plaintiff that he suspend further advertisement of the lands pending the negotiations with Ernest. Pending these negotiations Aycock consulted with the plaintiff as to the manner of securing the sale to Ernest; and finally, a short time thereafter, Aycock notified plaintiff that the company had succeeded in selling to Ernest all of the property then remaining, except a few town lots. The company did, in June, 1911, sell to Ernest, or to

him and his associates, the remaining land, and the price agreed upon was $150,000. After the sale Aycock told ·plaintiff that plaintiff's commission of 5 per cent. on the purchase-price should be paid as soon as possible, but that the purchase-price was partly on credit, and plaintiff might have to take his ·commissions in notes, which plaintiff agreed to do. Later, in November, 1911, plaintiff ·was notified by Aycock that he would not be paid his commissions on the sale to Ernest, for the alleged reason that the directors of the company declined to authorize ·payment.

"Plaintiff further alleged: He did not, in the year 1911 or 1912,· go before the ordinary of Bibb, Dougherty, or Colquitt county and register his name, the business that he proposed to engage in, and the place where it was to be conducted, or pay special tax as a person engaged in the business of buying and selling real estate on commissions. It was not necessary for him to do so, because the contract made by him with defendant was one of employment and service, and not one of the real estate owner on the one hand and a person or firm engaged in the business of buying and selling real estate on commissions on the other, for the reason that plaintiff was not, at the time of making the contract or at any time during the execution thereof, a person or firm engaged in the business of buying or selling real estate on commission; but on the contrary plaintiff was, during all of that time, the employee of defendant alone, and his entire time and services were, by the terms of the contract, commanded by the defendant alone, and he was not employed by or rendering service to any one else. The contract between plaintiff and defendant was not such a one for the selling of real estate on commission as is contemplated by the tax acts imposing a tax on a person or firm engaged in the business of buying or selling real estate on commission. Further, at the time that plaintiff was engaged in the execution of the contract he was an indigent Confederate soldier who was a resident of this State, and therefore was not subject to the payment of the tax; and even if he was subject to the tax, the non-payment of it is not and should not be a legal reason why he should not be entitled to his compensation under the terms of the contract.

"The defendant demurred to the petition, on the grounds, among others, that there was nothing alleged to show that Aycock had any authority, expressed or implied, to bind the defendant cor-

poration; and that the plaintiff could not recover a money judgment against the defendant, the petition showing that there was only an agreement for a sale and that no sale had been finally consummated, and not alleging that the purchase-price, or any portion thereof, had ever been paid to the defendant. A further ground of demurrer was, that, it appearing that the plaintiff had not complied with the law with reference to real-estate agents taking a license to do business, there can be no recovery in this case. The court sustained the demurrer on each and every ground, and dismissed the petition. Whereupon the plaintiff excepted."

The Supreme Court, in passing upon the demurrer, considered at length the ground that it appeared that the plaintiff had not complied with the law "with reference to real-estate agents taking a license to do business." However, the court passed upon all the other grounds of demurrer briefly, but as certainly, when it was held that "the other grounds of demurrer are without substantial merit." This being true, this court is now bound by the decision of the Supreme Court in this case. We therefore hold that all questions raised by the demurrer are res judicata, and that the plaintiff set forth a legal cause of action. Having so held, the issue upon the petition as raised by the defendant's plea is the only question for determination.

The defendant in its plea admitted that it and Toole did have an agreement respecting the sale of the lands described in the petition, but denied that the agreement was as alleged; averring that the agreement was as follows: "that the said plaintiff should advertise for purchasers and use such efforts as he saw fit to find purchasers and make sales of city lots and small tracts of land outside of the town limits, he was to receive no salary, was to pay all of his own expenses and has [as] compensation for all sales that he alone made he was to receive a commission of ten per cent. of the total purchase-price, and upon all sales made to parties sent or directed to him by Aycock he was to exhibit the property and use his best efforts to close the trade and if successful he was to receive as commission for the same five per cent. of the total purchase price. This agreement covered town lots and sales of individual small tracts of land. It was expressly understood that the said Aycock reserved the right to sell at any time he found a purchaser the whole of defendant's lands upon such terms as he saw fit, and in that event plaintiff was to receive no commission. It

46

was further distinctly understood that W. E. Aycock had the right to discontinue the work and service of plaintiff at any time he saw fit to do so." In the plea it was stated that "Defendant admits that when negotiations were begun by Walters and Aycock, as above stated, with H. J. Ernest for the sale of the entire tract of land held by the Wiregrass Development Company that W. E. Aycock promptly notified plaintiff of the same and instructed him to suspend further operation until the negotiations were terminated, that his services were not needed in that behalf; to which plaintiff made no objections or complaint and failed to set up any claim whatever to commissions on the whole tract if said negotiations resulted in a sale, but acquiesced in the same, recognizing the right to the said Aycock and Walters to negotiate and perfect said sale." "Defendant admits that they sold or made a contract with Ernest and his associates, by the terms of which contract the said Wiregrass Development Company was to make a deed to Ernest and his associates to 3059 8/10 acres of land at $50 per acre whenever the total purchase price should be paid, that there was no cash money paid in small monthly payments running for a period of six or seven years, and that only $200 has been paid under said contract, and defendant is very doubtful of receiving further payments, and for that reason will be compelled to abrogate [any] contract made with Ernest and his associates." At the conclusion of the evidence the court directed a verdict for $10, the same being 5 per cent. upon the $200 that the defendant admitted it received from the purchasers of the property.

From a careful examination of the entire record and all the evidence, we are of the opinion that the court erred in directing a verdict for $10. The evidence of the plaintiff was sufficient to have carried the case to the jury; and, under proper instruction, the jury should have been permitted to determine the issue as to whether the plaintiff was entitled to recover the additional commission. It is always error for the court to direct a verdict when the evidence makes an issue as to the truthfulness of the facts alleged by the plaintiff and the averments of the plea of the defendant. We do not discuss the testimony and what a jury might determine its probative value to be, for the reason that this case must be tried again. The court erred in overruling the motion for a new trial. See *Payne* v. *Ponder,* 139 *Ga.* 285 (77 S. E. 32).

*Judgment reversed. Wade, C. J., and Jenkins, J., concur.*