### 13683.  WILLIAMS *v.* SELPH & DANIELS.

The recovery of brokers' commissions on the sale of real estate was authorized by the evidence. There was a binding executory contract of sale between the owner and a purchaser procured by the plaintiffs, without regard to whether there was a failure to deliver the owner's bond for title. The right to commissions could not be defeated by the fact that the purchaser procured by the plaintiffs was not the sole purchaser, but at the instance of the owner bought jointly with his sons, who joined him in notes for the purchase-price. And after the completion of the contract the inability of the purchasers to pay for the property was immaterial so far as the right to commissions was concerned.

None of the excerpts from the charge of the court, complained of in the motion for a new trial, when considered in the light of the entire charge and the facts of the case, shows reversible error; and for no reason assigned did the court err in refusing to grant a new trial.

DECIDED JULY 25, 1922.

Complaint; from city court of Thomasville — Judge W. H. Hammond. May 6, 1922.

*H. J. MacIntyre, Branch & Snow,* for plaintiff in error.

*Titus & Dekle,* contra.

BROYLES, C. J. This was an action for broker's commissions. The evidence developed the following facts: On January 27, 1919, the defendant, W. W. Williams, entered into a written contract with the plaintiffs, Selph & Daniels, by which he authorized them to sell for him certain farm lands, and agreed to pay to them, if they found a purchaser for the lands at $50 per acre, a commission of $3 per acre. The contract contained no stipulation as to its duration, or as to the terms of payment, the owner having reserved the right to stipulate his own terms. The plaintiffs employed the Thomasville Real Estate Exchange, a partnership composed of B. F. Nazworth and W. E. Cragmiles, to assist them in finding a purchaser for the defendant's lands; and in August, 1919, Nazworth and Cragmiles procured G. T. Daniels as a prospective purchaser. Daniels and his two sons inspected the property and Daniels signified his desire to purchase the same. Nazworth thereupon telephoned to Williams, the owner of the property, who was in Savannah on his way to New York, that he had a purchaser for the property who offered to pay $55 per acre for it upon the following terms: $20,000 cash, $8,000 of which was to be paid down, and the remaining $12,000 of the cash payment to be paid on January 1, 1920, and the balance of the purchase-

price in one, two, and three years, to be evidenced by promissory notes. Williams advised Nazworth to make the best trade he could, and to " go ahead and make out the papers." About two weeks after this conversation with Nazworth, Williams returned from New York, and was informed by Nazworth that G. T. Daniels had agreed to purchase the property upon the above terms, having paid $100 to bind the trade, and that the sale was made under the Selph & Daniels contract. After being thus informed, Williams, without the knowledge or consent of the brokers, sent for G. T. Daniels and closed the trade with him and his two sons upon practically the same terms submitted by Nazworth and Cragmiles. the plaintiffs' employees. Williams drew up and signed a bond for title in which G. T. Daniels and his two sons were named as obligees, but there was some conflict in the evidence as to whether this bond for title was ever delivered. It appears, however, that an $8,000 note, executed by Dr. Baker to E. C. Daniels, one of the purchasers, was accepted by Williams as collateral security, and that from this note, which was subsequently paid, Williams realized $7,000, which amount he retained and credited on the first note due him by the purchasers. It also appears that the series of notes representing the balance of the purchase-price, which were executed by G. T. Daniels and his two sons and actually delivered to and accepted by Williams, were by their terms negotiable, and one of them contained a clause or indorsement that a failure to meet any deferred payment matured the entire debt. It appears also that under and by virtue of this contract of sale the purchasers went into possession of the property, but were later compelled to surrender possession because of their inability to raise the balance of the cash payment of $20,000.

Viewed in the light of the above facts, the verdict finding in favor of the plaintiffs was not contrary to law and the evidence. The fact that the purchasers, after the consummation of the trade with them by the owner of the property, were financially unable to pay for the property on the terms stipulated by the owner, is immaterial. This is so because the evidence shows that the defendant, the owner of the property, accepted and himself sold the land to the purchaser procured by the plaintiffs through their agents, Nazworth and Cragmiles. It is only when the owner fails and refuses to carry out a contract entered into in his behalf by

his broker and is thereupon sued by the broker for commissions that the broker is required to show that he procured a purchaser *financially able* to buy upon the terms proposed by the owner. Such a rule has no application where it appears (as it does in the instant case) that the owner took over the prospective purchaser procured by the broker and closed the trade with him by entering into a binding contract of sale, for when the owner does this he decides for himself the financial ability of the purchaser, and cannot, when sued by the broker who actually procured the purchaser, set up such financial inability, to defeat the broker's right to commissions.

The contention of the plaintiff in error, that, under the evidence, there was no binding contract of sale entered into between the owner and the purchaser procured by the brokers, but merely a tentative agreement on the part of the owner to sell on certain terms which were never consummated, is without merit. It will be recalled that the owner, as a result of the agreement entered into between him and the purchasers, surrendered possession of the land in question, accepted and retained a substantial part of the agreed purchase-price, and accepted a series of promissory notes for the balance thereof, negotiable by their terms, one of which contained a clause accelerating their maturity. Such facts clearly show a binding executory contract of sale between the owner and the purchaser procured by the plaintiffs; and this is true although it be conceded that the bond for title executed by the owner was never delivered to the obligees named therein. See, in this connection, *Odell* v. *Dozier,* 104 *Ga.* 203, 204 (2) (30 S. E. 813, 814), where it was said: " Upon the merits, the plaintiff was entitled to a recovery. He had been employed by the defendant to sell certain real estate, and had procured a purchaser, who entered into a written contract of purchase with the defendant, which was satisfactory to him. This ended the agent's connection with the matter, and he was entitled to receive the price which had been agreed upon for his services. Though it afterwards transpired that the purchaser was unable to comply with the contract originally entered into between himself and the defendant, and in consequence a new contract was made, these facts could not, either in law or justice, affect the plaintiff's right to receive compensation which he had fairly earned by doing all

he had undertaken to do in the premises." And in *Payne* v. *Ponder,* 139 *Ga.* 288 (77 S. E. 35), the Supreme Court, in discussing the case of *Odell* v. *Dozier,* supra, said: " An examination of the record on file in that case shows that the agent procured a purchaser, with whom the owner entered into a written contract of sale. By its terms no cash was to be paid, but the purchaser gave certain notes and agreed to erect certain improvements on the land sold by a stated time. It provided that if the purchaser should perform his obligations and pay the notes by the time specified, and give certain additional notes, the owner agreed to execute and deliver· to him a bond for title. *Nothing further was necessary to be done at the time of making the contract before it took final effect as a complete executory contract.* There was evidence tending to show that the purchaser failed to pay the notes given by him, and that the vendor made a new agreement with the purchaser." (Italics ours.)

The fact that, at the instance of the defendant, two sons of the purchaser procured by the plaintiffs were joined with the purchaser as the buyers of the land, and that all three gave their several and joint promissory notes for the purchase-price thereof, and that all three of them were named as obligees in the bond for title executed by the defendant, was immaterial, and insufficient to defeat the broker's right for commissions.

It follows from what has been said that the general grounds of the motion for a new trial are without merit.

None of the excerpts from the charge of the court, complained of in the amendment to the motion for a new trial, when considered in the light of the entire charge and the facts of the case, shows reversible error.

For no reason assigned was it error to overrule the motion for a new trial.

  *Judgment affirmed.  Luke and Bloodworth, JJ., concur.*